**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| MIGUEL ANGEL MONDRAGON, INMATE NO. 55844-019, | : : : | CRIMINAL INDICTMENT NO. 1:04-CR-0284-2-RWS |
| Movant, | : : | CIVIL ACTION NO. |
| v. | : : | 1:07-CV-0820-RWS |
| UNITED STATES OF AMERICA, Respondent. | : : : | |

## **ORDER AND OPINION**

Movant seeks via 28 U.S.C. § 2255 to challenge the constitutionality of the sentences he received for his September 13, 2005, convictions in this Court of conspiracy to possess with intent to distribute at least five kilograms of cocaine and attempt to possess with intent to distribute at least five kilograms of cocaine. The matter is before this Court on the 28 U.S.C. § 2255 motion to vacate, set aside, or correct sentence [Doc. 188]; the Government's answer-response [Doc. 194]; and Movant's traverse [Doc. 196].

I.    Background

On May 18, 2004, a federal grand jury sitting in the Northern District of Georgia returned a three-count indictment against Movant and three co-defendants

which charged Movant with conspiracy to possess with intent to distribute at least five kilograms of cocaine (count one) and attempt to possess with intent to distribute at least five kilograms of cocaine (count three). (Doc. 35.) Movant was not charged in count two of the indictment. (Id.)

Attorney Robert H. Citronberg was initially appointed to represent Movant. (Doc. 19.) On June 14, 2004, Attorney Herbert Shafer filed an entry of appearance on behalf of Movant. (Doc. 61.)

On June 17, 2004, the Government filed a motion to have Shafer disqualified as counsel for Movant on the basis that there existed a potential conflict of interest due to Shafer previously representing co-defendant Gilberto Flores.[1] (Doc. 70.) On June 29, 2004, Magistrate Judge Joel Feldman held a hearing on the matter. (Doc. 75.) On July 6, 2004, Judge Feldman recommended that the Government's motion be denied. (Doc. 81.) On August 24, 2004, this Court adopted Judge Feldman's recommendation and denied the Government's motion. (Doc. 95.)

---

[1] On April 12, 2005, Flores pled guilty to counts one and three, and on September 8, 2005, he received sentences totaling ninety-six (96) months. (Docs. 128, 147, 148.)

On June 15, 2005, following a jury trial, Movant was convicted of both counts. (Doc. 144.) On September 8, 2005, Movant received two concurrent 192-month sentences, to be followed by five years on supervised release. (Doc. 157.)

On September 19, 2005, Movant appealed his convictions and sentences in the United States Court of Appeals for the Eleventh Circuit. (Doc. 160.) In addition to Shafer, Movant was also represented on appeal by Attorney Donald F. Samuel. (Id.) During its review, the Eleventh Circuit gave the following summary of the evidence introduced at trial:

> Relying on a tip, Drug Enforcement Agency ("DEA") agents conducted a controlled delivery of 15 kilograms of cocaine to Gilberto Flores, an alleged co-conspirator of Mondragon. Agents placed a sensor in the dashboard of a Chevy Cavalier automobile that was delivered to Flores, in order to monitor access to a compartment where the cocaine had been hidden. Flores drove the car to the residence in question and parked it in a covered garage. After the car was parked, the sensor was activated by someone attempting to access the compartment where the cocaine had been hidden. Because the sensor had been activated, agents entered the premises without a warrant and without permission, to secure the evidence. While conducting a protective sweep of the premises, the agents arrested Flores, who is alleged to have triggered the trip wire, secured the 15 kilograms of cocaine located in the vehicle, encountered Mondragon in an upstairs bathroom, gave him his Miranda warning in Spanish, asked him questions, and secured his consent to search the house. After receiving written consent from Mondragon to search the premises, agents found over eight ounces of cocaine, drug

3

> paraphernalia, approximately $700,000 in cash, and a 9mm semi-automatic pistol hidden in the kitchen cupboard.
>
> At trial, Mondragon took the stand in his defense, testifying that he was unaware of any drugs in the stash house, that none of the contraband belonged to him, that he was not involved in a drug conspiracy, and that he had never met any of the charged co-conspirators, including Flores, who was arrested in the house. Mondragon also testified that he did not live at the stash house, and that he had given a friend a ride to the residence. Moreover, Mondragon testified that agents threatened him with 25 years' imprisonment, and that he signed the consent to search form to avoid being beaten. Mondragon did not testify concerning the 9mm pistol found in the residence.

United States v. Mondragon, 181 Fed. App'x. 904, 905, 2006 WL 1428269 (11th Cir. May 24, 2006) (unpublished opinion). (Doc. 187.) On May 24, 2006, the Eleventh Circuit affirmed Movant's convictions and sentences. Id. at 907.

On April 10, 2007, this Court received Movant's 28 U.S.C. § 2255 motion to vacate, set aside, or correct sentence. (Doc. 188.) As his sole ground for relief, Movant contends that he received ineffective assistance of trial counsel as a result of Shafer previously representing Flores. (Id. at 4.)

On March 19, 2009, the Government filed its response. (Doc. 194.) The Government maintains that Movant knowingly and voluntarily waived his right to complain of a potential or actual conflict of interest due to Shafer's prior

4

representation of Flores. (Id. at 14-17.) The Government also contends that Movant was not denied effective assistance of counsel because no actual conflict existed, and he did not suffer any prejudice. (Id. at 17-20.)

Movant's traverse was received on April 6, 2009. (Doc. 196.) As in his motion to vacate sentence, Movant argues that he is functionally illiterate and unable to understand the concept of a conflict of interest. (Doc. 188, memorandum of law at 5-6; Doc. 196 at 1-2.) Movant also "asserts that an evidentiary hearing will show the Court that even after 30 months of education classes at the institution where he is incarcerated, he still does not have grasp of the issues relevant to making a knowing and voluntary waiver." (Doc. 196 at 2.)

II. Analysis

A. Conflict of Interest - Waiver

The Government contends first that Movant waived his right to avoid a potential conflict of interest and elected to have Shafer represent him. The Eleventh Circuit Court of Appeals gave the following explanation of the rules governing the waiver of a conflict of interest:

> An attorney "may" be disqualified when an actual or even a potential conflict of interest exists, but the defendant may waive this conflict

of interest and elect to have the attorney continue representation, so long as that waiver is knowing, intelligent, and voluntary. In order for a waiver of the right to conflict-free counsel to be knowing and intelligent, the State must show that the defendant (1) was aware that a conflict of interest existed; (2) realized the consequences to his defense that continuing with counsel under the onus of a conflict could have; and (3) was aware of his right to obtain other counsel. Although the district court is not required to accept a defendant's waiver, a criminal defendant has a presumptive right to counsel of choice and courts should hesitate to disqualify defense counsel.

United States v. Garcia, 447 F.3d 1327, 1337 (11th Cir. 2006) (internal citations and quotations omitted).

In concluding that Movant waived his right to conflict-free counsel, Judge Feldman made the following findings:

Present at the hearing were both defendants, Attorney Stanley Baum, who had been appointed to represent co-defendant Flores; Attorney Robert Citronberg, who had been appointed to represent co-defendant Miguel Mondragon; Attorney Herbert Shafer; and Assistant U. S. Attorney Carol Kayser, which hearing was taken down by a Court Reporter.

[T]his Court carefully explained to both defendants the dangers inherent in allowing Mr. Shafer to represent co-defendant Mondragon after he had previously represented co-defendant Flores. More particularly, this Court advised defendant Mondragon that, in defending him, Mr. Shafer would be prohibited from cross-examining Mr. Flores about any of the information Mr. Flores had given to him unless Mr. Flores consented thereto.

. . . .

6

It also advised each of the defendants that such defendant had the right to confer with the undersigned outside the presence of anyone else, and each defendant advised that he wanted to avail himself of such opportunity.

As a consequence of the foregoing, the undersigned separately met with each of the two defendants and again reviewed the potential for problems if Mr. Shafer remained in the case. In his meeting, Mr. Mondragon indicated that he wanted Mr. Shafer to continue to represent him even though Mr. Shafer may have previously represented Mr. Flores. He also acknowledged that Mr. Shafer may be prohibited from fully questioning Mr. Flores, and that said defendant might be prohibited from raising, as a ground for appeal for habeas corpus, the fact that Mr. Shafer may have rendered ineffective assistance of counsel because he may be limited in questioning Mr. Flores. In response, Mr. Mondragon advised that Mr. Shafer did not intend to question Mr. Flores in any event, and he wanted Mr. Shafer to continue to represent him.

. . . .

In his own defense, Mr. Shafer represented that the only conversation he had with Mr. Flores was limited to whether Mr. Flores would be able to pay his fee, and that he never discussed the facts of the case with Mr. Flores. He further represented that in the event he felt that it was necessary to question Mr. Flores, he would not personally do so and would, rather, employee Attorney Robert Citronberg for that purpose.

Based on the foregoing, and notwithstanding the Government's objections, this Court is compelled to conclude that each of the aforesaid defendants has knowingly and intelligently waived his rights with respect to Mr. Shafer's representation of Mr. Mondragon. Consequently, this Court is compelled to conclude that Mr. Shafer should be permitted to represent Mr. Mondragon.

7

(Doc. 81 at 3-6.) This Court notes that, despite Shafer's claim that he only discussed his fee with Flores, Shafer appeared on Flores' behalf at the detention/probable cause hearing held by Magistrate Judge Alan J. Baverman on May 3, 2004, and continued on May 6, 2004. (Docs. 24, 28.) Thus, as Movant suggests, Shafer likely had some knowledge of the case as it pertained to Flores before withdrawing as his counsel. (Doc. 188, memorandum of law at 7-8.) Regardless of Shafer's actual knowledge, the above indicates that Movant was made aware of the potential conflict of interest and chose to proceed with Shafer. Significantly, contingencies were made in the event Flores might need to be cross-examined. Movant also knew that he could have counsel appointed, as Citronberg had initially been appointed to represent him.

Movant claims, however, that he does not speak English and did not understand that Judge Feldman and the Government were attempting to protect his interests. (Id. at 6, 9.) Movant, who had resided in the United States for nearly a decade when he was arrested, demonstrated during trial that he, in fact, understands and speaks some English by answering questions before the interpreter could translate them into Spanish for him and admitting to a "sort of understanding" of English. (Doc. 167, trial transcript at 247-48.) Moreover, while

8

Movant may, as he claims, be functionally illiterate, that does not demonstrate that his waiver was unknowing. See LoConte v. Dugger, 847 F.2d 745, 751 (11th Cir. 1988) ("mere lack of average intelligence without more does not necessitate the conclusion that a criminal defendant did not know and understand the nature and factual bases of a charge against him").

Of course, "[a]dditional care must be taken [] to assure that such a defendant does have a clear understanding of the consequences." Id. Judge Feldman's questions show that he endeavored to make sure that Movant understood the consequences of the waiver. Movant's answers to those questions demonstrate his understanding of the potential pitfalls of proceeding with Shafer. This Court concludes, therefore, that Movant knowingly, intelligently and voluntarily waived his right to have conflict-free representation. Consequently, Movant should not be permitted to now claim any actual conflict of interest warrants vacating his sentences.

### B. Conflict of Interest - Ineffective Assistance

Although Movant waived his right to be represented by a conflict-free attorney, this Court, for the reasons discussed below, concludes, in the alternative, that Movant has failed to show he was denied ineffective assistance of counsel on

9

the basis of a conflict of interest. In order for Movant to demonstrate that he received ineffective assistance of counsel due to a conflict of interest, he "must show *first*, that his attorney had an actual conflict of interest, and *second*, that the conflict adversely affected counsel's performance." Pegg v. United States, 253 F.3d 1274, 1277 (11th Cir.2001) (italics in original). "To satisfy the actual conflict prong, a defendant must show something more than a possible, speculative, or merely hypothetical conflict." Reynolds v. Chapman, 253 F.3d 1337, 1342-43 (11th Cir.2001) (internal quotation omitted). One seeking to prove ineffective assistance of counsel based on an actual conflict must "point to specific instances in the record to suggest an actual conflict or impairment of their interests . . . and must demonstrate that the attorney made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other." Id. at 1343 (internal citation omitted). "If he [the attorney] did not make such a choice, the conflict remains hypothetical." Id.

Here, Movant merely states that he "could not count on any benefit of a cross-examination of Mr. Flores, because of the previous representation by Attorney Shafer in the matter." (Doc. 188, memorandum of law at 7.) A decision by counsel not to cross-examine a witness is a tactical one, and one claiming

10

ineffective assistance of counsel based on a failure to cross-examine must show that the trial tactic was unreasonable. Dorsey v. Chapman, 262 F.3d 1181, 1185-86 (11th Cir. 2001). "A strategic decision by defense counsel will be held to constitute ineffective assistance only if it was so patently unreasonable that no competent attorney would have chosen it." Kelly v. United States, 820 F.2d 1173, 1176 (11th Cir. 1987) (internal quotation omitted). As noted above, neither Shafer nor Movant anticipated any need to cross-examine Flores. Further, Shafer was prepared to have another attorney employed to cross-examine Flores if necessary. Movant does not even attempt to speculate how any failure to cross-examine Flores prejudiced him. Accordingly, Movant has not satisfied his burden of showing that an actual conflict of interest adversely affected his trial.

As a final matter, Movant has alleged a pre-trial "breakdown in the client-attorney relationship during which Mr. Shafer refused to accept Mondragon's calls." (Doc. 196 at 2.) Movant, who maintained his innocence throughout trial and at sentencing,[2] also claims he wanted to plead guilty, but Shafer proceeded to trial against his wishes. (Doc. 188, memorandum of law at 7.) Movant does not attempt to develop either of these claims as instances of ineffective assistance of

---

[2] (Doc. 169, sentencing transcript at 3.)

11

counsel and seems, instead, to make these allegations in an attempt to disparage Shafer. Therefore, neither of these allegations serve as a basis for granting Movant's motion to vacate sentence.

III. Conclusion

**IT IS ORDERED** that Miguel Angel Mondragon's 28 U.S.C. § 2255 motion to vacate, set aside, or correct sentence [Doc. 188] is **DENIED**.

**IT IS SO ORDERED**, this  12th  day of August, 2009.

_____
**RICHARD W. STORY**
United States District Judge

AO 72A
(Rev.8/82)